Dana J. Oliver, Esq. (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone:  (855)384-3262
Facsimile:  (888)570-2021

Attorney for Plaintiff and Putative Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>CLEAR LINK INSURANCE AGENCY, LLC and ALLEGIANT HOLDINGS, LLC<br><br>    Defendants. | Case No. 8:23-cv-1742-CJC-ADS<br><br>**FIRST AMENDED COMPLAINT** |

  Plaintiff Asher Bronstin ("Mr. Bronstin"), by his undersigned counsel, for this class action complaint against Clear Link Insurance Agency, LLC ("Clear Link") and Allegiant Holdings, LLC ("Allegiant") and their present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, allege as follows:

## I.    INTRODUCTION

1.    <u>Nature of Action</u>: As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.    This case involves a campaign by Clear Link to make pre-recorded calls to generate new customers, in alleged violation of the TCPA.

3.    Those calls were made by Allegiant.

4.    Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

## II.    PARTIES

5.  Plaintiff is an individual.

6.  Defendant Clearlink Insurance, LLC is a limited liability company that offers insurance in this District, just as it did with the Plaintiff.

7.  Defendant Allegiant Holdings, LLC is a limited liability company that makes pre-recorded calls into California, as it did with the Plaintiff.

## III.    JURISDICTION AND VENUE

8.  <u>Jurisdiction.</u> This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

9.  <u>Personal Jurisdiction</u>: This Court has personal jurisdiction over Defendants because they made telemarketing calls into this District and offer insurance as a result of those calls.

10. <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—occurred into this District.

# IV.    FACTS

## A.    The Enactment of the TCPA and its Regulations

11.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

12.    The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service or that is charged per the call.  *See* 47 U.S.C. § 227(b)(1)(A)(iii).

13.    The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B).  *See* 47 U.S.C. § 227(b)(3).

14.    According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15.    In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**B.    Unsolicited Telemarketing to Plaintiff**

16.    Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17.    Plaintiff's cellular telephone number is (760) 705-XXXX.

18.    Mr. Bronsin uses the number for personal, residential, and household reasons.

19.    Mr. Bronsin never provided his prior express written consent to receive calls from the Defendants.

20.    Mr. Bronsin never did business with the Defendants.

21.    Despite this, the Defendants sent him multiple pre-recorded telemarketing calls.

22.    This included pre-recorded calls on at least July 25, 2023.

23.    The recorded message indicated that the caller was contacting the recipient about insurance services.

24.    The recorded message was generic, not personalized to the recipient, and was designed to secure new customers.

25.    The call was clearly pre-recorded because (a) there was a significant pause after the Plaintiff picked up the phone before the robot started speaking (b) the recording would keep play when the call recipient began talking (c) the robot had a generic monotone voice.

26.    During the July 25, 2023 call, following the pre-recorded message, the Plaintiff spoke with Jared Blizzard, who is an employee of the Defendant.

27.    Mr. Blizzard promoted supplemental Medicare insurance, which is an insurance offering of the Defendant.

28.    Mr. Blizzard sent the Plaintiff an e-mail the following day to follow up on the offer he made to the Plaintiff.

29.    The telemarketing alleged herein: (A) invaded Plaintiff's privacy and solitude; (B) wasted Plaintiff's time; (C) annoyed Plaintiff; (D) tied up Plaintiff' phone line; and (E) harassed Plaintiff.

1

2

3

## **CLEAR LINK'S VICARIOUS LIABILITY**

30.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

31.     In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

32.     The FCC has instructed that sellers such as Clear Link may not avoid liability by outsourcing telemarketing to third parties, such as Allegiant:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

33.    In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

34.    Clear Link is liable for telemarketing calls placed by Allegiant to carry out calling for Clear Link to generate customers for Clear Link.

35.    Clear Link authorized Allegiant to send telemarketing calls and transfer the call recipient directly to Clear Link.

36.    Clear Link controls the day-to-day activities of Allegiant telemarketing for Clear Link.

37.    Clear Link restricts the geographic footprint into which its telemarketing vendors, including Allegiant, can cause calls to be made.

38.    Clear Link provided the specific criteria for the leads it would accept and required its vendors, including Allegiant, to adhere to those criteria.

39.    Indeed, Clear Link has previously received complaints of telemarketing conduct by their vendors.

40.    The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently

privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46.

Evidence of circumstances pointing to apparent authority on behalf of the

telemarketer "should be sufficient to place upon the seller the burden of

demonstrating that a reasonable consumer would not sensibly assume that the

telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

## V.    CLASS ACTION ALLEGATIONS

41.    <u>Class Definition</u>.  Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3),

Plaintiff bring this case on behalf of the Class (the "Class") defined as follows:

> **Robocall Allegiant Class:** All persons within the United States: (1) to
> whose cellular telephone number (2) Allegiant (or an agent acting on
> behalf of Allegiant) placed a call (3) within the four years prior to the
> filing of the Complaint (4) using a pre-recorded message.

> **Robocall Allegiant  ClearLink Sub-Class:** All persons within
> the United States: (1) to whose cellular telephone number (2)
> Allegiant (or an agent acting on behalf of Allegiant) placed a
> call (3) within the four years prior to the filing of the Complaint
> (4) using a pre-recorded message (5) that was transferred to
> ClearLink.

42.    Excluded from the Class are counsel, Defendants, any entities in

which Defendants have a controlling interest, Defendants' agents and employees,

any judge to whom this action is assigned, and any member of such judge's staff

and immediate family.

43.     The Class, as defined above, is identifiable through telephone records and telephone number databases.

44.     The potential members of the Class likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

45.     Individual joinder of these persons is impracticable.

46.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

47.     Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as she has no interests that conflict with any of the class members.

48.     Plaintiff and all members of the Class have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

49.     This class action complaint seeks injunctive relief and money damages.

50.     There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

1          a.     whether Defendants systematically made pre-recorded

2    telemarketing calls;

3
4          b.     whether Defendants made calls to Plaintiff and members of the

5    Class without first obtaining prior express written consent to make the calls; and

6
7          c.     whether members of the Class are entitled to treble damages

8    based on the willfulness of Defendants' conduct.

9        51.    Plaintiff's claims are typical of the claims of the Class.

10
11       52.    Plaintiff's claims, like the claims of Class, arise out of the same

12   common course of conduct by Defendants and are based on the same legal and

13   remedial theories.

14
15       53.    Common questions of law and fact predominate over questions

16   affecting only individual class members, and a class action is the superior method

17   for fair and efficient adjudication of the controversy. The only individual question

18   concerns identification of class members, which will be ascertainable from records

19
20   maintained by Defendants and/or its agents.

21
22       54.    A class action is the superior method for the fair and efficient

23   adjudication of this controversy. Class-wide relief is essential to compel

24   Defendants to comply with the TCPA. The interests of individual members of the

25   Class in individually controlling the prosecution of separate claims against

26
27   Defendant are small because the damages in an individual action for violation of

28

FIRST AMENDED COMPL.
*Bronstin v. Clear Link Insurance Agency, LLC*

the TCPA are small. Management of these claims is likely to present significantly
more difficulties than are presented in many class claims. Class treatment is
superior to multiple individual suits or piecemeal litigation because it conserves
judicial resources, promotes consistency and efficiency of adjudication, provides a
forum for small claimants, and deters illegal activities. There will be no significant
difficulty in the management of this case as a class action.

55.    Defendants have acted on grounds generally applicable to the Class,
thereby making final injunctive relief and corresponding declaratory relief with
respect to the Class appropriate on a class-wide basis. Moreover, on information
and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants
and/or its affiliates, agents, and/or other persons or entities acting on Defendants'
behalf that are complained of herein are substantially likely to continue in the
future if an injunction is not entered.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(b)(3)**
**(On Behalf of Plaintiff and the Pre-Recorded Call Class)**

56.    Plaintiff repeats the prior allegations of this Complaint and
incorporates them by reference herein.

57.    The foregoing acts and omissions of the Defendants and/or their
affiliates, agents, and/or other persons or entities acting on Defendants' behalf

constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiffs and members of the Class delivering pre-recorded messages.

58.    As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential or cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

59.    If the Defendants' conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

60.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.      Certification of the proposed Class;

B.      Appointment of Plaintiff as representative of the Class;

C.      Appointment of the undersigned counsel as counsel for the Class;

D.      A declaration that Defendants and/or its affiliates, agents, and/or other related entities' actions complained of herein violated the TCPA;

E.      An order enjoining Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future;

F.      An award to Plaintiff and the Class of damages, as allowed by law; and

G.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.      DEMAND FOR JURY

Plaintiff demand a trial by jury for all issues so triable.

## VII.    SIGNATURE ATTESTATION

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from each of its other signatories.

RESPECTFULLY SUBMITTED AND DATED this 24th day of January, 2024.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

By: */s/ Anthony I. Paronich*
    Anthony I. Paronich, *Pro Hac Vice*
    anthony@paronichlaw.com
    PARONICH LAW, P.C.
    350 Lincoln Street, Suite 2400
    Hingham, Massachusetts 02043
    Telephone: (617) 738-7080
    Facsimile: (617) 830-0327

    *Attorneys for Plaintiff and the Proposed Classes*